THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY D. PRIMMER, SR., Defendant-Appellant.

Fourth District   No. 4—82—0348

Opinion filed January 11, 1983.

[redacted]

John E. Gambill and Charles McRae Leonhard, both of Allen & Korkowski & Associates, of Rantoul, for appellant.

Hugh Finson, State's Attorney, of Monticello (T. J. Wilson, Assistant State's Attorney, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Following a jury trial in the circuit court of Piatt County, defendant, Larry D. Primmer, Sr., was convicted on April 28, 1982, of attempted murder, two charges of armed violence each predicated on separate acts of criminal damage to property, one charge of aggravated assault and two charges of reckless conduct. The court subsequently sentenced defendant to terms of 15 years' imprisonment for the attempted murder and armed violence convictions and 364 days' imprisonment for the other convictions. All terms were ordered to be served concurrently. Defendant appeals asserting the trial court erred in (1) failing to *sua sponte* give proper issues instructions, (2) failing to give retroactive effect to a legislative amendment concerning the offense of criminal damage to property, (3) denying defendant's request to vacate certain evidence, and (4) sentencing.

The incidents giving rise to the charges occurred at Hammond in Piatt County on August 18, 1981. The evidence established that during that summer Mary O'Neill, the daughter of defendant's wife had been living with her mother and defendant. On August 17, she ran away from that home and went to the residence of Sharon and William Lowe. On August 18, she left the Lowe residence and went to the county probation office. Letitia Farris testified that on August 18

she had a conversation with defendant in which he stated that if he didn't find Mary, he would kill the Farris' family dog. Her husband, David Farris, testified that on August 18 he was looking out of an upstairs bathroom at his home and saw defendant walking up the Farris driveway and into the back yard, apparently armed with a shotgun. Mr. Farris further testified that following a conversation, defendant aimed the gun at the window and fired at the window and in a short time fired two additional shots at the house.

Sharon Lowe testified to also having a telephone conversation with defendant on August 18. She stated that later on that day, she heard two gunshots near her home and that one of the shots struck her living room window. Other witnesses testified to seeing defendant driving his car in that area at about the time of the shots. A Piatt County deputy sheriff testified he had a telephone conversation with defendant on August 18 in which defendant said, "I shot hell out of them, didn't I."

The issue concerning the instructions arises from evidence concerning defendant's state of sobriety at the time of the shooting incidents. Neither Mr. nor Mrs. Farris noticed anything unusual about defendant's demeanor on August 18. An employee of the county probation office testified that defendant appeared at that office that morning inquiring about Mary. He appeared to be coherent and did not smell of intoxicants but acted irrationally. Mrs. Lowe testified that defendant's voice and demeanor were normal during their telephone conversation. On the other hand, the deputy sheriff stated defendant sounded as if he were intoxicated. The officer who arrested defendant at about 6:15 p.m. on the 18th described defendant as then being moderately to extremely intoxicated. Defendant's stepson testified that he saw defendant at 2:30 p.m. which was before the shooting incidents, and defendant was intoxicated then. Defendant's son testified his father had a problem with alcohol, and defendant's father described defendant as an alcoholic.

■ None of the issues instructions given by the trial court concerning the various offenses made any reference to the partial affirmative defense of voluntary intoxication. When that defense is raised, issue instructions concerning offenses requiring a mental state of intent or knowledge should include Illinois Pattern Jury Instruction, Criminal, No. 25-25.02A (2d ed. 1981) (hereinafter cited as IPI Criminal) which states:

"_____ Proposition: That at the time of the offense, the defendant was capable of acting [(knowingly) (intentionally)]."

The State does not dispute that the evidence raised a defense of in-

toxication as to the charges of attempted murder, armed violence and criminal damage to property and that the above instruction was proper. However, the State maintains no error occurred, because the defendant did not tender the instruction. The failure to give an instruction not tendered is not error unless the failure constitutes "grave error" or, in a close case, when fundamental fairness requires the giving of the instruction. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 545, 440 N.E.2d 1248, 1252; 87 Ill. 2d R. 451(c).) Accordingly, the issue before us is whether the failure to give the instruction was plain error as defined most recently by *Huckstead*.

The supreme court has held that plain error resulted when the trial court gave conflicting instructions as to the elements the State was required to prove (*People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532) and when the issues instruction given to the jury failed to mention that the State was required to prove intent to defraud in a trial for deceptive practices. (*People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861.) On the other hand, in *Huckstead*, no plain error occurred when, without objection, the trial court, in a murder case, gave the jury an issues instruction which failed to require the State to negate the affirmative defense of self-defense although that issue had been raised by the evidence. The supreme court noted that: (1) the court had instructed the jury (a) defining the affirmative defense, (b) explaining that defendant did not have to prove his innocence, and (c) stating that the burden of proof remained with the prosecution at all times; (2) defense counsel had repeatedly informed the jury in closing argument that the State had the burden of proving defendant was not justified in using whatever force was shown; (3) the State had admitted this burden in its argument; and (4) although there was evidence of justification, the case was not factually close on that issue. The court stated, citing *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, that error in instructions in a criminal case would be deemed plain error only if the error was of a grave nature as in *Jenkins* and *Ogunsola* or when it occurred in a case where the evidence was very close.

IPI Criminal No. 24-25.02 defining voluntary intoxication or drugged condition states:

"[(An intoxicated) (A drugged)] person is criminally responsible for his conduct unless his [(intoxication) (drugged condition)] renders him incapable of acting [(knowingly) (intentionally)]."

The record is clear that one instruction in the form of No. 24-25.02 was given phrased as to intoxication, but the record is unclear as to whether it was phrased as to intent or knowledge. Among the

numbered copies of the instructions at C260 and C261 appear two instructions designated as "Peoples Instruction No. 21 IPI 24-25.02 Modified." The one at C260 is phrased as to intent but has no indication on the copy as to whether it was given or refused. The copy at C261 is phrased as to knowledge and contains the notation: "Given." With the original given instructions the record contains what appears to be the original of the copy appearing at C260 (the instruction phrased as to intent), but there is no notation as to whether the instruction was given. No original of the copy of the instruction appearing at C261 (the one phrased as to knowledge) appears in the record. However, at R538 the court is shown to have stated, out of the presence of the jury and just prior to closing argument, the following:

"Show prior to closing arguments, Mr. Simpson raised a point concerning People's No. 21 being I.P.I. No. 24-25.02, that it should contain reference to the term intentionally, not just knowingly, and accordingly, the—in accordance with his request, the instruction is changed, People's 22 is withdrawn to be resubmitted to be as before with the change being intentionally in 24-25.02, and the last sentence—last word, rather, of the first sentence of that instruction as it was originally submitted."

On the basis of the foregoing record, we conclude that an instruction in the form of No. 24-25.02 was given phrased as to intent but that no such instruction was given phrased as to knowledge.

■ Intent is the mental state for the offense of attempted murder and the charge here alleged defendant acted with the intent to kill. Thus as to that offense, as in *Huckstead*, the jury was instructed as to the elements of the affirmative defense raised by the defendant. The jury was informed that defendant was not responsible for his conduct if his intoxication "rendered him incapable of acting intentionally." In addition, the issues instruction did inform the jury that the State was required to prove beyond a reasonable doubt that defendant acted with intent to kill. The instructions would have been more complete if the jury had also been informed, as stated in No. 24-25.02A that the State was required to prove defendant "was capable of acting intentionally," but the instructions as given make it clear that the State was required to prove beyond a reasonable doubt that defendant was not so intoxicated as to negate intent. The issues instruction and that defining the affirmative defense combine in a way here that was not present in *Huckstead* where the issues instruction made no mention of justification or self-defense. Accordingly, we need not discuss the other factors considered in *Huckstead* because, as far as the attempted murder conviction is concerned, any inaccuracy in

the instructions falls far short of plain error.

■ Knowledge was the mental state for the offenses of armed violence predicated on criminal damage to property and aggravated assault as charged here (Ill. Rev. Stat. 1979, ch. 38, pars. 21—1, 12—2, 4—3(b)). Because the instruction defining the affirmative defense of voluntary intoxication made no reference to the mental state of knowledge, that defense as to these charges was not explained to the jury. Thus, the situation as to these offenses is different than it was with the offense of attempted murder and with the murder offense in *Huckstead*. The situation also differs from that in *Huckstead* in that here, neither defense counsel nor the prosecutor made any reference in closing argument to the State's burden to negate intoxication. Nevertheless, the evidence that the defendant at the time of the acts involved was at least sober enough to know that he was shooting at buildings that would be damaged and that his conduct would put a person in reasonable apprehension of receiving a battery was overwhelming. The undisputed testimony that defendant stated, "I shot hell out of them, didn't I?" would attest to that. In view of the very restricted situation in which failure to properly instruct the jury *sua sponte* constitutes plain error (*Huckstead; Roberts*) we find no plain error in the instructions given as to these offenses.

The armed violence charges of which defendant was convicted (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) were based on charges that, while armed with a dangerous weapon, defendant committed criminal damage to the property of the Farrises and Lowes respectively (Ill. Rev. Stat. 1979, ch. 38, par. 21—1(a)). By Public Act 82—495 enacted September 16, 1981, effective January 1, 1982, section 21—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 21—1) was amended. The amendment raised the amount of value of property damaged necessary to make the offense a felony, when the violation was of subsection (a), as here, or subsection (f), from a sum exceeding $150 to a sum exceeding $300. Defendant maintains that section 4 of "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1981, ch. 1, par. 1103) requires that retroactive application be given to section 21—1 of the Criminal Code of 1961 in such manner that we treat the criminal-damage-to-property offenses charged here to have been misdemeanors which could not have been the underlying offenses for the armed violence charges.

■ By the terms of section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2), the underlying offense for armed violence must be a felony. Defendant maintains that on January 1, 1982, the effective date of the amendment to section 21—1 of

the Criminal Code of 1961 which raised the threshold value of the property damage needed to make the offense a felony, section 4 operated to prevent a conviction of defendant for armed violence based on criminal damage to property when the property was only alleged to exceed $150. We need not explain the provision of section 4 because we deem the holding in *People v. Bilderback* (1956), 9 Ill. 2d 175, 137 N.E.2d 389, to be dispositive of this issue. In *Bilderback*, the defendant was charged with assault with intent to commit the felony of escape from a penal institution. At the time of the occurrence giving rise to the charge, the offense of escape from the type of institution involved was a felony, but before trial that offense was reduced to a misdemeanor. Thus, there, as here, the felonious character of the offense which formed a basis of the offense charged was negated between the time of the offense charged and the time of trial. There, the supreme court held that section 4 did not operate to give retroactive application to the amendment and prevent conviction of the offense charged. We follow that holding here and reject defendant's claim of retroactive application. Nothing cited in *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477, indicates a different result.

■■ We likewise reject defendant's claim that certain of the convictions should be vacated. Although the evidence indicated that more than one shot was fired at both the Farris house and the Lowe trailer, defendant maintains only one conviction can be supported by the conduct at each place, because, in answer to a request by the defendant to elect which act it was relying on to support the armed violence charged at each place, the State responded it was relying on all shots fired. No authority is cited to support this claim. We do not deem the State's response to preclude separate convictions from arising from separate acts.

The offense of reckless conduct in shooting at David Farris was not an included offense of the attempt to murder David Farris because the reckless conduct charge, which defendant deems an included offense, required an endangering of the safety of Farris while the attempted murder charge had no such element.

■■ ■ We also find no error to have occurred at sentencing. The trial court's statement that defendant could never compensate the victims for their mental anguish was not a violation of the requirement that it consider in mitigation defendant's stated intention to pay for the damage he had caused. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.1(6).) No error resulted from the State's calling at sentencing the psychiatrist it had appointed to examine the defendant in anticipation of the defendant's possible insanity defense. No physician-patient rela-

tionship was created by the examination. The privilege arising when a physician is appointed to make an examination concerning an accused's competency to stand trial (Ill. Rev. Stat. 1981, ch. 38, par. 104—14) was not applicable. The defendant did not submit to the examination under compulsion as he had requested the appointment of the psychiatrist. (See *Estelle v. Smith* (1981), 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866.) Considering the serious nature of the offense and defendant's inability over a substantial period of time to control his use of alcohol, the sentence was not an abuse of discretion regardless of whether he had shown some improvement at the time of sentencing. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

We affirm.

MILLS and TRAPP, JJ., concur.