Robert James MORGAN,
Petitioner-Appellant,

v.

Thomas R. ISRAEL and Bronson C.
LaFollette, Respondents-Appellees.

No. 83–2186.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1984.

Decided May 31, 1984.

Richard D. Martin, State Public Defender, Madison, Wis., for petitioner-appellant.

Stephen Kleinmaier, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondents-appellees.

Before PELL and POSNER, Circuit Judges, and PARSONS, Senior District Judge.*

POSNER, Circuit Judge.

■ This appeal from the denial of a petition for a writ of habeas corpus requires us to consider once again the federal constitutional implications of Wisconsin's procedure for determining whether a criminal defendant should be acquitted because he is insane. See Wis.Stat. § 971.175; *Muench v. Israel,* 715 F.2d 1124, 1131–33 (7th Cir.1983); *Weber v. Israel,* 730 F.2d 499 (7th Cir.1984); MacBain, *The Insanity Defense: Conceptual Confusion and the Erosion of Fairness,* 67 Marq.L.Rev. 1 (1983). Robert Morgan was charged in 1975 with the first-degree murder (conviction of which in Wisconsin carries with it a mandatory sentence of life imprisonment) of George Mallason. He pleaded not guilty, then changed his plea to not guilty by reason of insanity. Under Wisconsin procedure such a plea is an admission of guilt subject to a reservation of the defense of insanity. Therefore, when a defendant pleads not guilty by reason of insanity his trial is confined to the issue of insanity, which he has the burden of proving by a preponderance of the evidence. Wis.Stat. § 971.15(3). The test for insanity is that of the American Law Institute's Model Penal Code § 4.01(1) (Proposed Official Draft 1962): "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacked substantial capacity either to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law." Wis.Stat. § 971.15(1). If a defendant wants to contest other issues as well as insanity, he should plead not guilty. The jury will hear the other issues first, will decide whether the defendant is guilty (without regard to his sanity), and then, if it decides he is, will proceed to consider whether he should nonetheless be acquitted because he was insane. Wis.Stat. § 971.175. Psychiatric evidence is inadmissible in the first stage of the trial, even if the defendant's intent is in issue. *Steele v. State,* 97 Wis.2d 72, 81–85, 93, 294 N.W.2d 2, 7–8, 14 (1980). We upheld the constitutionality of this exclusion in *Muench v. Israel, supra,* 715 F.2d at 1137–44.

Morgan was found guilty, and after exhausting his state remedies brought this federal habeas corpus proceeding. He argues that he did not understand that by pleading not guilty by reason of insanity he was giving up his right to show that he did not have a criminal intent when he killed Mallason, and that therefore he did not knowingly waive his constitutional right to trial by jury and should be granted a new trial. The district court thought his allegations sufficiently substantial to warrant a hearing. Morgan, and his lawyer at the time of his prosecution, testified. The district court concluded that Morgan had knowingly waived his right to a trial of the issue of intent, and therefore denied the petition for habeas corpus.

Morgan argues, not without considerable force, that the reason he pleaded not guilty by reason of insanity is that, knowing he had killed Mallason and supposing therefore that his only hope was to negate the element of intent that makes killing murder, he figured that a plea of not guilty by reason of insanity was the appropriate plea to put the issue of intent before the jury; a simple plea of not guilty, he thought, would be tantamount to a denial that he had killed Mallason, an untenable position. The state's answer, which the district court found convincing, is that the trial judge explained to Morgan that by pleading not guilty by reason of insanity he was giving

* Hon. James B. Parsons, of the Northern District of Illinois, sitting by designation.

up his right to insist that the state prove all of the elements of first-degree murder, one of which is homicidal intent, beyond a reasonable doubt. Morgan replies that he thought the defense of insanity subsumed all aspects of criminal intent, and did not know that by pleading not guilty he could have forced the state to bear the burden of proving his criminal intent beyond a reasonable doubt, rather than having himself to shoulder the burden of proving that even though he had the required criminal intent he should be acquitted because insane.

■ If Morgan was confused, it would be entirely understandable. The proposition that you can be insane yet be able to form the intent required for an utterly deliberate criminal act such as first-degree murder smacks of paradox. We can resolve the paradox, however, by attending carefully to the difference between knowing what one is doing, on the one hand, and, on the other, knowing that what one is doing is wrongful and having the capacity to resist doing it. The first mental state is the one required to form the criminal intent for a specific-intent offense such as first-degree murder; the second is the mental state of being sane (in the legal sense of the word). Negating the first mental state usually leads to conviction of some lesser included offense, such as manslaughter, that does not require proof of specific intent (in first-degree murder, the intent, without lawful justification, to kill a human being, see Wis.Stat. § 940.01). Negating the second leads to a complete acquittal. Concerning these distinctions see Morris, Madness and the Criminal Law 54–76 (1982); *United States v. Brawner*, 471 F.2d 969, 998–1002 (D.C.Cir.1972) (en banc); Arenella, *The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage*, 77 Colum.L.Rev. 827, 831–36 (1977); Morris, *Psychiatry and the Dangerous Criminal*, 41 So.Cal.L.Rev. 514, 520–21 (1968); American Bar Association, Criminal Justice Mental Health Standards: First Tentative Draft pp. 7–274 to 7–276 (1983); Comment, *The Relevance of Innocence: Proposition 8*

*and the Diminished Capacity Defense*, 71 Calif.L.Rev. 1197, 1198–99 (1983).

■ Suppose that Morgan had been so deranged at the time of the killing that he thought Mallason not a human being but a toad, or that he thought Mallason a convicted murderer and himself the public executioner, appointed to execute Mallason on the spot. In neither case would Morgan have harbored the intent required to convict one of first-degree murder, so the trier of fact would have had to acquit him of that charge without reaching the issue of insanity, defined for these purposes as either inability to tell right from wrong or inability to resist the impulse to commit the crime. Under Wisconsin law that issue comes into play only after the defendant has been found guilty without consideration of his sanity—has, in other words, been found to have the capacity required to form the necessary criminal intent. The fact that under Wisconsin law the defendant cannot introduce psychiatric evidence to show incapacity to form a specific criminal intent, even though the absence of such an intent would require acquittal of the specific-intent offense charged, see, e.g., *State v. Schulz*, 102 Wis.2d 423, 429–31, 307 N.W.2d 151, 156 (1981), and even though psychiatric evidence might be highly relevant because insanity in its extreme forms can destroy the ability to form such an intent, is a problem, maybe a serious one, with the Wisconsin procedure. But this court upheld that element of the procedure in *Muench*, and we have not been asked to reexamine it here.

■ Now suppose, instead, that Morgan, though realizing that Mallason was a human being whom he was not licensed to kill—knowing, in other words, that he was committing murder—murdered Mallason because he heard voices inside his head commanding him to do so and could not resist their importunings, or because he had a paranoid delusion that Mallason was plotting against him or was a tool of Satan or had the evil eye, or for any other reason, rooted in insanity, which overbore Morgan's will to resist committing a criminal

act. In all of these cases Morgan would intend to do a killing he knew to be without authorization in law, and thus would have the required intent for first-degree murder, but he would have a plausible insanity defense. See *Greider v. Duckworth*, 701 F.2d 1228, 1236 (7th Cir.1983) (concurring opinion).

■ If Morgan, understanding this subtle distinction, pleaded not guilty by reason of insanity because he felt his only hope of acquittal was to convince the jury that he was insane, though not so insane as to be incapable of intending to kill a human being knowing he was not authorized to do so, the waiver of his constitutional right to trial by jury on all of the elements of the crime with which he was charged, including homicidal intent, was a knowing waiver and the petition for habeas corpus was properly denied. Morgan now denies that he understood the distinction. He asserts that he thought that by pleading not guilty by reason of insanity he was reserving his right to raise every possible issue with regard to his state of mind at the time of the offense, and did not realize that by pleading not guilty he could have preserved a broader range of intent-related issues. But the district court found to the contrary, and we cannot say that its finding was clearly erroneous. Morgan's lawyer testified that he explained the difference to Morgan and that Morgan understood it: "The upshot of the matter was that Mr. Morgan and I agreed that on the facts it appeared that intent to kill could be proven by the State beyond a reasonable doubt. That was our mutual opinion as we discussed it." Moreover, there was a tactical reason for the change of plea. Morgan was also charged with having murdered Mallason's wife and child, and he thought that the credibility of his denial of those murders would be enhanced if he pleaded guilty to the Mallason murder. His lawyer disagreed, but Morgan was insistent, so in argument to the jury the lawyer made much of his client's "honesty" in admitting having murdered Mallason. And the jury acquitted him of the other two murders.

Even if we rejected as just too incredible the proposition that Morgan could really have understood a difference that few lawyers and judges understand, we do not think this would warrant reversing the district court. It is sufficiently clear that Morgan had no hope at all of an acquittal on the basis of a lack of criminal intent to enable us to infer that he would not have changed his plea to not guilty even if the difference between the two pleas had been explained to him with such patient thoroughness that he could not have failed to understand it. The point is not that he "probably would have pleaded guilty anyway," *Henderson v. Morgan*, 426 U.S. 637, 644 n. 12, 96 S.Ct. 2253, 2257 n. 12, 49 L.Ed.2d 108 (1976), which would not be good enough, but that he certainly would have pleaded guilty. At no time has Morgan argued, and the evidence presented in his insanity trial did not indicate, that when he shot Mallason several times he was not trying to kill a human being knowing that this was forbidden. He admitted having shot Mallason; and when you shoot a person several times, with fatal results, the inference of deliberate homicide is irresistible, unless there are some extenuating or explanatory circumstances. The only explanation Morgan cared to offer was that he had been insane. But he did not mean insane in the extreme form that negates the existence of criminal intent; in his own words, stated in response to a plea questionnaire when he was charged, he was pleading guilty "to having shot [Mallason] unwillingly, unknowingly, without the *full* comprehension and understanding of what I was doing and without *full* control of my senses." (Emphasis added.) He did not kill in a trance, but (he believed he could prove) with sufficiently impaired mental capacity to establish an insanity defense. Nor is this a case where the defendant has nothing to lose, though little to gain, from insisting that the prosecution prove its case to a jury; for we have seen that Morgan believed that pleading not guilty to the murder of Mallason might prejudice his defense against the other two murders with which he was charged and on which he was tried along with the charge of murdering Mallason.

Maybe the consequences of the plea should have been explained more carefully to Morgan, though realism requires us to acknowledge that if the courts required that a criminal defendant really understand "exceedingly complex" charges and defenses, *Nash v. Israel*, 707 F.2d 298, 303 (7th Cir.1983), plea bargaining would be infeasible, to the ultimate detriment of the defendants themselves. But in any event we are convinced that a more careful explanation would not have led to any different result, even if (as we doubt) it would have led to a more perfect understanding on Morgan's part. Morgan's insistence on not pleading guilty, in the face of his lawyer's contrary advice, shows a determination most unlikely to be upset by a fuller explanation of the consequences of such a plea. Morgan was quite rational in wanting to stake his all on the insanity defense. The jury never would have believed that he lacked the much more elementary mental capacity required to form a murderous intent—especially since, as we know from *State v. Steele* and *Muench v. Israel*, he would not have been allowed to put in psychiatric evidence to support a claim that he lacked the required intent.

The Wisconsin courts and the district judge have given patient and scrupulous attention to Morgan's claim, and have found it wanting. This is at bottom a case where a defendant, determined to set the lines of strategy for his defense (as he is constitutionally entitled to do), now repents a choice made with adequate if not perfect knowledge of the consequences. The judgment denying the petition for habeas corpus is

AFFIRMED.