Jackie **EVANS**, Petitioner-Appellant,

v.

Leo **MEYER**, Warden, Logan Correctional Center, Respondent-Appellee.

No. 82–1055.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 1, 1983.

Decided Aug. 23, 1984.

Cudahy, Circuit Judge, filed dissenting opinion.

Suzanne Philbrick, Oak Lawn, Ill., for petitioner-appellant.

Jackie Evans, pro se.

Kenneth A. Fedinets, Ill. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before CUMMINGS, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Jackie Evans appeals from the district court's denial of his application for a writ of habeas corpus. The principal ground for the appeal and the only one worth discussing is that the district court should have held an evidentiary hearing to determine whether the failure of Evans' counsel to advise Evans that he might have a defense of intoxication either constituted ineffective assistance of counsel or made Evans' plea of guilty involuntary.

At 4:30 one morning Evans entered a police station and asked the radio operator, Lonbom, to call Detective Azbill for him. Lonbom told Evans to call Azbill himself, using a telephone in another office. Evans left but returned shortly and placed a steak knife against Lonbom's neck and told him to call Azbill and tell him to come to the station. Lonbom did as told. When Azbill arrived, Evans told him to unload his gun and place the gun and cartridges on the counter; Azbill complied. Evans then told Azbill to go and get a police report on him. Azbill again did as told. When he returned he noticed that Evans had reloaded Azbill's gun and was holding it. Azbill expressed some concern about this turn of events but Evans assured Azbill that he was afraid of guns and never used them. Evans let Lonbom leave the station, and Evans and Azbill then spent an hour and a half discussing the contents of the police report and also the question of Evans' visitation rights with his daughter. Azbill told Evans he thought he could bring the daughter to the station and Evans told him that that was what he wanted. Azbill brought the child to the station, where Evans spoke with her privately for a while and was then arrested. He was charged with a variety of offenses under Illinois law, and in 1978 pleaded guilty and was sentenced to 9½ years in prison.

■ Although Evans told his lawyer that he had been extremely drunk during the incident at the police station, the lawyer advised him that he had no defense of intoxication, and it is this advice of which Evans principally complains. There is de-

bate in the briefs over whether intoxication is a defense under Illinois law to the crimes with which Evans was charged, but the state concedes that it is to at least one (unlawful restraint), and for purposes of this appeal we shall assume (without deciding) that it is to all. We still do not think that Evans is entitled to a hearing on his claim of ineffective assistance of counsel. For it is apparent from the facts narrated above, none of which Evans disputes, that no competent counsel would have advised Evans to risk a trial in which his defense would have been intoxication.

■ Intoxication as such is not a defense to a criminal charge; many crimes are committed by people who are under the influence of alcohol. The only relevance of intoxication is that it may prevent the perpetrator from forming the intent required by law for the commission of the particular crime. The offenses with which Evans was charged were armed violence, unlawful restraint, and forcible detention. See Ill.Rev.Stat.1983, ch. 38, §§ 33A–2, 10–3, 10–4. "Armed" violence is the commission of a felony while armed with a dangerous weapon. Forcible detention and unlawful restraint are felonies, and hence possible predicates of an armed-violence charge. Forcible detention is committed when a person armed with a dangerous weapon "holds an individual hostage without lawful authority for the purpose of obtaining performance by a third person of demands made by the person holding the hostage." Unlawful restraint is committed when one "knowingly without legal authority detains another." Forcible detention requires that the offender be able to form the intent to obtain performance of his demands by a third person, and it is plain that Evans had and indeed fulfilled that purpose by taking Lonbom hostage in order to get Azbill to talk to him. It is also apparent that Evans could not have believed that he had the legal authority to hold a knife to Lonbom's throat, and therefore was also able to form the intent required to commit unlawful restraint. It is not as if Evans, perhaps suffering from delusions, believed that

Lonbom was a threat to him and that he was acting in self-defense; there is not the slightest suggestion of delusion, hallucination, or automatism. Evans knew who Lonbom was and knew that he had no authority to threaten Lonbom; his actions belie any claim that he was so drunk that he could have misconceived his authority to do what he did.

Thus, with respect to both the forcible-detention and the unlawful-restraint charges, and hence with respect to the armed-violence charge as well, a defense of intoxication would have been at best a theoretical possibility. The uncontested facts of the incident out of which the criminal charges grew made it inconceivable that a jury would have acquitted Evans because he was too intoxicated to form the intent required to commit these crimes. See *People v. Primmer*, 111 Ill.App.3d 1046, 1052, 67 Ill.Dec. 593, 597, 444 N.E.2d 829, 833 (1983).

■ All this is so plain that no lawyer in his right mind would have advised Evans to go to trial with a defense of intoxication, especially when he could if convicted on all charges have been sentenced to 120 years in prison. Evans' argument thus reduces to the proposition that his lawyer should have told him that he had at least a theoretical defense of intoxication, should have explained to him the unlikelihood that the defense would be accepted in a trial, but should have left to him the ultimate decision whether to raise the defense. That might well have been the better course but the only issue for us is whether Evans' conviction should be set aside on the ground that he was denied "reasonably effective assistance of counsel," *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), bearing in mind that, "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* 104 S.Ct. at 2065–66. It is not the normal practice of lawyers to advise their clients of every defense or argument or tactic that

while theoretically possible is hopeless as a practical matter. Among other objections to holding that they must do so is that it would create an exquisite conflict between the lawyer's duty to his client and to justice; for by holding back from his client some unimportant information about litigation options the lawyer would guarantee that the client could get his guilty plea set aside as involuntary if he was dissatisfied with the sentence he received after pleading guilty. The fact that an intoxication defense may have been Evans' only possible defense to any of the charges against him would not change this conclusion. "If there is no *bona fide* defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *United States v. Cronic*, —— U.S. ——, 104 S.Ct. 2039, 2045 n. 19, 80 L.Ed.2d 657 (1984).

■ It is not enough, moreover, for Evans to show that his lawyer unreasonably failed to raise the intoxication defense. The Supreme Court has now made clear that, "Conflict of interest claims aside [and none is made here], actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland v. Washington, supra,* 104 S.Ct. at 2067; see also *Wade v. Franzen*, 678 F.2d 56, 59 (7th Cir.1982). Although these are cases where there was an actual trial, that should make no difference. It is true that if there has been no trial the record will be scantier. But when there has been a trial the record still may be incomplete because of the strategy followed by the very lawyer whose competence has been called into question; and yet the Supreme Court has made clear that the court must, in evaluating a claim of ineffective assistance of counsel, require that the claimant show actual prejudice. We do not think that requirement should be dispensed with here just because, as in the vast majority of criminal cases, the defendant pleaded guilty.

The uncontested facts show that Evans cannot satisfy the requirement of "affirmatively prov[ing] prejudice." It is inconceivable to us, and not merely improbable as in *Henderson v. Morgan*, 426 U.S. 637, 644 n. 12, 96 S.Ct. 2253, 2257 n. 12, 49 L.Ed.2d 108 (1976), that Evans would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received. It just is not believable that Evans did all the things he does not deny having done, involving elaborate negotiations with the police over several hours, in some sort of alcohol-induced trance. In this respect the present case resembles *Morgan v. Israel*, 735 F.2d 1033 (7th Cir.1984). In evaluating the voluntariness of Morgan's failure to plead not guilty we said, "It is sufficiently clear that Morgan had no hope at all of an acquittal to enable us to infer that he would not have changed his plea to not guilty .... He admitted having shot Mallason; and when you shoot a person several times, with fatal results, the inference of deliberate homicide is irresistible .... The jury never would have believed that he lacked the ... elementary mental capacity required to form a murderous intent...." *Id.* at 1036.. So here, no jury could have believed that Evans was not acting deliberately when he did all the things he did in the police station. Therefore, being told that if he had not been acting deliberately he would have been acquitted of some of the offenses with which he was charged could not have led him to change his plea and to win acquittal.

▬▬▬ As our discussion of the *Morgan* case should make apparent, it changes merely the form, and not the substance, of the argument for Evans to contend that by not telling him that he had a defense of intoxication his lawyer made his plea of guilty involuntary. A voluntary choice presupposes some knowledge of the consequences of the choice, and a plea of guilty may therefore be held to be involuntary if the defendant was not informed by his lawyer of his defenses to the criminal charges. See, e.g., *Clay v. Director, Juvenile Division*, 631 F.2d 516, 520–22 (7th Cir.1980). But if we are right that not every failure to inform a defendant of a defense theoretically available to him constitutes ineffective assistance of counsel, neither can every such failure make the defendant's guilty plea involuntary. Just as the assistance of counsel need not be perfect in order to be adequate, so a plea of guilty does not have to be perfectly informed in order to be voluntary. Evans knew all he needed to know when he pleaded guilty. The additional information that he now claims his lawyer should have given him would not have led him to alter his plea.

*United States v. Frye*, 738 F.2d 196 (7th Cir.1984), where an evidentiary hearing was ordered on the habeas corpus petitioner's claim to have been denied effective assistance of counsel and to have entered an involuntary plea of guilty, is distinguishable on several grounds, including the existence of a potential conflict of interest, the petitioner's refusal in pleading guilty to admit an essential element of the offense, and the trial judge's action in accepting her guilty plea without engaging her in a "meaningful dialogue." 738 F.2d at 200–201.

The judgment denying Evans' petition for a writ of habeas corpus is

Affirmed.

CUDAHY, Circuit Judge, dissenting.

The majority treats this as a simple case, indeed as an open-and-shut case. I do not believe this is a fair way to treat it. Because the majority gives such short shrift to the factual and procedural circumstances which make this for me a difficult case, I find it necessary to address them in some detail.

The allegations of Evans' petition for post-conviction relief are substantially identical to those of his petition for a writ of habeas corpus. Evans, twenty years old at the time of his guilty plea, alleged that he had a history of alcoholism, severe depression, suicidal tendencies and psychomotor

epilepsy;[1] that prior to the events in question he had been drinking for a long period of time; and that he remembered leaving a tavern, passing out in an alley and waking up in a jail cell. There he was informed of the events that had taken place at the police station. Evans further claimed that in several early meetings with counsel they agreed that Evans' best defense was that of intoxication; at subsequent meetings, however, counsel told Evans that he could not rely on an intoxication defense because he was charged with crimes requiring general rather than specific intent. Counsel told Evans that a negotiated plea was his only course of action.

Evans allegedly was informed by counsel that there was a strong possibility that the judge would refuse to accept the plea if Evans continued to maintain that he had no recollection of the events in question.[2] Consequently, counsel advised Evans that to show recollection he should agree with everything counsel said in the course of the hearing. Evans therefore affirmatively stated that he agreed with the factual basis for the plea as related to the court by counsel. And, following counsel's instructions, Evans added (in an effort to convince the judge that he remembered the incident) that he never pointed a gun at anyone in the police station and that he had asked Azbill if he would like to leave the station.

Evans stated in an affidavit accompanying his petition that he still did not remember committing the crimes to which he pleaded guilty. In sum, Evans alleged that

counsel made no effort to investigate the practicability of an intoxication, "blackout" or automatism defense, and coerced Evans into leading the trial court to believe that he recalled the events giving rise to the charges.

Evans did not receive an evidentiary hearing on the allegations of his post-conviction petition in the state courts, although he maintained that such a hearing was necessary to determine whether a "blackout" or automatism defense was viable or practicable and stated that Doctor Kiley was willing to testify that Evans' memory lapse was real; that during the events at the police station Evans was in a "semi-fugue state"; and that "his mind was not controlling his actions." The state trial judge determined that the transcript of the guilty plea proceeding refuted Evans' "blackout" defense, stating that,

His attorney, in his presence at the arraignment, without refutation by the defendant, said that he had just learned that the defendant remembered everything the evening of the occurrence. And the defendant volunteered to the court that he never pointed a gun at Mr. Azbill and that the defendant asked Azbill if he would like to leave the police station.

The state appellate court determined that Evans' allegation that his attorney informed him intoxication was not a possible defense to *any* of the crimes with which he was charged was supported by the record.[3]

---

1. In an affidavit accompanying the petition for a writ of habeas corpus, Evans stated that trial counsel had been informed that Evans was an epileptic and that medical records at the Illinois Research Hospital would confirm this. Counsel allegedly failed to review these records.

2. The trial judge was told early in the proceedings that Evans was claiming he had no memory of committing the crimes with which he was charged. The trial judge ordered an evaluation of Evans' competency to stand trial.

Submitted with the petition for post-conviction relief were the reports of Doctors Sunderland and Kiley, who had evaluated Evans and found him competent to stand trial. With respect to Evans' alleged loss of memory, Kiley's report stated that:

Jackie's "memory lapse" may indeed be real ... [and] with this man's background of denial and escape, it is not unlikely that anger plus alcohol could lead to such a "blackout." One must conclude that Jackie remains responsible for establishing and fostering the conditions which stimulated such a "blackout," if it did occur.

Sunderland's report stated that:

His memory is good except that he has an apparent loss of memory for the events for which he is charged. This is probably due to the influence of alcohol causing a temporary loss of memory.

3. At the guilty plea proceeding, counsel stated:

As the Court knows, these are general intent crimes. The very act of doing the act is

Citing *People v. Logue,* 45 Ill.2d 170, 258 N.E.2d 323 (1970), for the proposition that to establish the constitutional inadequacy of representation by appointed counsel a defendant must demonstrate actual incompetency and substantial prejudice, the appellate court stated:

> Assuming, *arguendo,* that the defendant was so intoxicated that he could not form the required intent for four of the charges against him [the two counts of forcible detention and the armed violence counts based upon the forcible detention counts], the fact remains that he was also charged with four general intent felony charges, including two class "X" felonies.[4]

The appellate court added that not only was Evans' claim of intoxication conclusory and unsupported by affidavits, but Evans' "voluntary" statements at the guilty plea proceeding explaining some of the factual bases of the incident belied his contention that he was so intoxicated he could not remember committing the crimes with which he was charged. Although apparently conceding that intoxication was a possible defense to four of the charges against Evans and finding that Evans was informed to the contrary by counsel, the state appellate court did not proceed to apply the Illinois legal standard of ineffective assistance to the facts. Rather, the appellate court determined that Evans' "voluntary" statements at the guilty plea proceeding refuted his defense of intoxication. These "voluntary" statements apparently were used to buttress the state court's implicit determination that any erroneous advice given by counsel on the availability of an intoxication defense did not substantially prejudice Evans.

Evans fared no better in the federal district court. The decision of the district court gave only cursory attention to Evans' claim. After quoting selected passages from the Supreme Court's discussion in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), of the presumption of correctness to be accorded state court factual findings, the district court stated that

> [a] reading of the record presently before this Court clearly reveals that the question of the voluntariness of the petitioner's guilty plea because of coercion and ineffective assistance of counsel was squarely presented to both the state trial and appellate courts and ruled upon adversely to the petitioner. Based upon the *Sumner* case, *supra,* and a consideration of the total record before this Court the petitioner has failed to establish an entitlement to the relief sought here.

Apparently, the district court viewed the ultimate issue whether Evans' guilty plea was constitutionally valid as a question of fact and deferred to the state courts' rulings on the issue. I think this approach is unsupportable.

This court has held that the question whether a plea of guilty is entered knowingly, intelligently and voluntarily is a mixed question of law and fact "that requires the application of legal principles to the historical facts." *Nash v. Israel,* 707 F.2d 298, 301 (7th Cir.1983), (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980)). *See also United States ex rel. Tonaldi v. Elrod,* 716 F.2d 431, 437 (7th Cir.1983). Although the district court was required to accord a presumption of correctness to the state courts' findings of fact (unless one of the eight grounds for an exception enumerated in the habeas corpus statute was applicable, 28 U.S.C. § 2254(d)), the district

---

sufficient should the jury determine that that act, in fact, took place. Intent here is not required to the extent that a possible defense existed for Mr. Evans—using a defense of intoxication.

4. Evans pleaded guilty to two counts of forcible detention, three counts of armed violence, and one count of unlawful restraint. It appears from the record that one count of unlawful restraint and one count of armed violence were dismissed. The four general intent felony charges to which the state appellate court referred apparently were the two unlawful restraint charges and the two armed violence charges based upon them.

court was not bound by the state courts' legal conclusion that Evans' plea of guilty was entered knowingly with the advice of competent counsel. *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982) (per curiam). Indeed, "[i]t [was] the district judge's *duty* to apply the applicable federal law to the state court fact findings independently." *Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963) (emphasis added).

Presented with an inadequate determination by the district court that leaves us with nothing to review, the majority attempts to do what the district court failed to do. Focusing solely on the stated factual basis for Evans' plea of guilty, the majority proceeds to apply the federal standard of ineffective assistance of counsel to what are characterized as "undisputed" facts.[5] We are told that "no lawyer in his right mind would have advised Evans to go to trial with a defense of intoxication" because it was apparent that Evans had formed the intent required by law for the commission of the crimes with which he was charged. In essence, the majority argues that, because Evans performed the acts constituting the offenses as legally defined, he necessarily and as a matter of law had formed the specific intent to commit them.

Then, in the role of fact finder, the majority determines that no jury would have acquitted Evans on the ground that he was too intoxicated to form the intent required to commit the crimes. Having taken for granted the futility of an intoxication defense, the majority proceeds to the question whether counsel's assistance was ineffective because he failed to inform Evans that an intoxication defense was a possibility. The majority thinks not, but the answer is uninformed by any analysis of counsel's actual advice. And, the majority says any incompetence was harmless not only because the defense was infeasible but because the "additional information"

that Evans claims he should have received from counsel "would not have led him to alter his plea."

The decision whether to plead guilty or proceed to trial is one that remains at all times with the defendant personally. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). It is the defendant who must, "with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Brady v. United States,* 397 U.S. 742, 750, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970). And only a knowing, voluntary and intelligent plea of guilty is constitutionally valid.

The efforts that counsel is required to make in order to effectively advise his client how to plead to charges are only modestly demanding. Certainly, the plenary investigation of the factual and legal bases for the charges required when the case is to go to trial is not demanded at the pleading stage of the proceedings. Counsel's investigatory efforts must, however, be sufficient to enable him to discharge his duty to provide the defendant with an understanding of the law in relation to the facts and to advise him meaningfully of his options. *See United States v. Frye,* 738 F.2d 196, 199–200 (7th Cir.1984). A lawyer who is unfamiliar with the facts and the law relevant to his client's case cannot provide that prescribed minimal level of assistance.

A rational and informed decision to plead guilty cannot be made by a defendant who lacks knowledge of his options and the potential consequence of pursuing one rather than another. Although I do not believe that counsel is obliged to inform a defendant of every technical or evidentiary defense that might be raised at trial, counsel has a responsibility to investigate potential affirmative defenses. *Id.; Lee v. Hopper,* 499 F.2d 456, 463 (5th Cir.1974).

---

**5.** Specifically, the majority notes that the facts of the incident at the police station are not disputed by Evans. Strictly speaking this is true. Evans claims he does not remember the incident and has alleged that he agreed with the factual basis for the plea propounded by counsel at the hearing because counsel informed him the judge would not otherwise accept the plea.

This is not a case in which counsel's advice, rendered after investigation of the facts and research into the applicable law, was that a defense, though theoretically available, was not likely to be a practical option under the circumstances. Rather, proceeding on the erroneous legal assumption that *all* crimes with which Evans was charged were general, and not specific, intent crimes, counsel informed Evans that he had no affirmative defense to the charges. Thus, counsel advised Evans that essentially he had no options.

The majority refrains from suggesting that counsel's advice reflects "informed, professional deliberation," *United States v. Bosch,* 584 F.2d 1113, 1122 (1st Cir.1978), and rightly so. I cannot imagine a clearer case of apparent unfamiliarity with the law. Knowledge of the elements of an offense is a prerequisite to determining the availability of a particular defense. To hold that counsel's advice cannot reflect incompetence would be to lower drastically and impermissibly the standard to which lawyers must be held.

The majority would leave with counsel plenary authority to define his client's options. It concludes that, if counsel deems infeasible the only affirmative defense available in principle to his client, counsel may unilaterally determine that his client has no options. Although the majority concedes that the better course is for counsel to inform his client that the defense is theoretically available, explain that the defense is unlikely to be pursued successfully and leave to the client the ultimate decision whether to raise the defense, the majority decides that counsel's failure to take these steps does not constitute ineffective assistance.

In fact, the hypothetical ineffective assistance of counsel claim which the majority addresses bears no resemblance to the case actually before the court. The majority's conclusion presupposes that counsel was aware of the theoretical availability of the defense and had engaged in investigatory efforts sufficient to satisfy himself that the defense was infeasible.[6] But the allegation is that Evans' counsel never investigated the feasibility of any affirmative defense attempting to negate the specific intent element of the offenses because counsel concluded that all offenses with which Evans was charged were general intent crimes. Thus, the majority's discussion of the feasibility of an intoxication defense is irrelevant to what counsel actually did here. At best, this discussion is relevant only in the context of the majority's harmless error analysis, to which I now turn.

To my knowledge, this circuit has not addressed the issue whether ineffective assistance of counsel may be harmless in the context, not of trial, but of a challenge to the voluntariness or intelligence of a plea of guilty. We necessarily have not determined what the appropriate inquiry into prejudice must be. Indeed, the Supreme Court only recently made clear exactly what standard is to be applied in the context of a trial. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Yet, without benefit of briefing on the issue and with no analysis of why it is appropriate to do so, the majority applies the *Strickland* prejudice standard in this case. Whether this standard is readily adaptable to a guilty plea proceeding is a question that deserves more than cursory attention.

In *Strickland,* the Supreme Court analyzed the question of prejudice in terms of the purpose of the sixth amendment guarantee of counsel, which is "to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the pro-

---

**6.** I would not readily agree with the majority's thesis that counsel may determine his client's options even if its hypothesized case were before the court. Counsel's duty is to inform the defendant of his options and render an assessment of the relative advantages of pursuing one or another. In a case in which only one affirmative defense is available and the facts of the incident suggest to counsel that the issue whether the defense is feasible deserves some investigation, I believe the defendant should be informed of the results of that investigation. To hold otherwise is in effect to permit counsel to decide whether his client should plead guilty.

ceeding." 104 S.Ct. at 2067. The focus in the trial context is on whether deficiencies in counsel's performance so prejudiced the defense that the government won when it would probably otherwise have lost. The burden has been placed upon the defendant to

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

104 S.Ct. at 2068. This governing legal standard, explained the Supreme Court, "plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors." 104 S.Ct. at 2069. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.*

At the pleading stage of the adversary criminal process, when the accused must determine whether he is to exercise or to waive his right to defend, there is need for counsel to assist the accused in making a rational, intelligent and voluntary choice and to insure that he is treated fairly by the state. The test for whether counsel's acts or omissions have prejudiced the accused must serve the purpose of insuring that the waiver of constitutional rights that attends a plea of guilty is voluntary, knowing and intelligent.

The majority concludes that any incompetence on the part of Evans' counsel was not prejudicial for two reasons: (1) it is inconceivable that a jury trial, at which Evans raised a defense of intoxication, would have resulted in his acquittal; and (2) the "additional information" that Evans claims counsel should have given him "would not have led him to alter his plea."

I believe that, in the context of a guilty plea, the inquiry whether counsel's acts or omissions have prejudiced the defendant should not focus on whether there is a reasonable probability that the defendant would have been acquitted had he chosen to proceed to trial. This prong of the majority's test is unworkable in the case of a guilty plea because the reviewing court has no trial record to review and consequently no way of evaluating the effect of counsel's errors in relation to the case as actually presented by the prosecution. To attempt to predict the outcome of a trial in a case in which no investigation of potential affirmative defenses has been made and the court has before it only the factual basis for the plea of guilty (which is merely the prosecution's summary of what it would attempt to prove at trial) is an exercise in "unguided speculation." *Holloway v. Arkansas,* 435 U.S. 475, 491, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978).

Further, the majority forgets that the issue with respect to the voluntariness of the plea is not whether the defendant would have been convicted but whether he knowingly and intelligently waived his right to go to trial. The majority treats this case as if the issue were the sufficiency of the evidence, not the voluntariness of the plea. This is simply wrong. Even guilty defendants have a right to go to trial, and a waiver of that right, to be effective, must be voluntary.[7]

7. The majority apparently relies upon *Morgan v. Israel,* 735 F.2d 1033 (7th Cir.1984), for the proposition that a defendant who seeks to overturn a guilty plea on the ground that it was involuntary must show he would have been acquitted had he proceeded to trial. Morgan, who was charged with the murders of one Mallason and Mallason's wife and child, originally pleaded not guilty to all three charges. Later, against the advice of counsel and for strategical reasons, Morgan changed his plea to not guilty by reason of insanity with respect to the charge of murdering Mallason, thereby admitting his guilt and confining the trial on that charge to the issue of insanity. Although Morgan was acquitted of the murders of the woman and child, his insanity defense was unsuccessful and he was convicted of murdering Mallason. In a petition for federal habeas corpus relief, Morgan argued that he had not understood that by pleading not guilty by reason of insanity he was waiving his right to present a defense of lack of specific intent to kill. Following an evidentiary hearing, the district court found that Morgan had understood the consequences of his plea. On appeal, this court held that the district court's finding was not clearly erroneous. The

The second prong of the majority's harmless error analysis is somewhat more responsive to the concern that a plea of guilty be an intelligent choice made by the defendant. It is appropriate to focus here on whether, given counsel's error—the rendering of erroneous advice that no affirmative defense was even theoretically available—the plea of guilty still can be said to be intelligent, i.e., to represent a rational and relatively informed choice. Perhaps one appropriate inquiry into prejudice would consider whether there is a reasonable probability that the defendant, armed with the information he claims counsel should have provided, might have opted to proceed to trial. Another inquiry might be into expert opinion of attorneys about whether a competent lawyer would have provided the client with the information. In answering the question whether the defendant might have chosen to proceed to trial, I would not, however, try to read the defendant's mind in determining, as the majority has done, that the additional information Evans claims counsel should have given him "would not have led him to alter his plea." Although the defendant's testimony on this score at an evidentiary hearing or through affidavit would certainly be relevant, other factors would have to be taken into account. For example, in the present case, the maximum sentence which could have been imposed had Evans been convicted on all counts at trial would be such a factor. The practicability of the defense would be another such factor; if the defense was totally impracticable under the circumstances, the choice to plead guilty surely can be said to have been rational.[8] In the case before us, we have an inadequate factual basis for determining whether an affirmative defense to the charges was practicable. What little we can glean from the record supports the proposition that Evans is not making a retrospective effort to fabricate a defense.

These difficult factual determinations concerning the adequacy of counsel and the voluntariness of Evans' plea simply cannot be determined without a hearing. Because Evans did not receive a full and fair evidentiary hearing in state court I would remand the case for this purpose. *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *Frye,* at 200. Evans should be given an opportunity to establish through whatever evidence is relevant that a "blackout" or automatism defense was practicable and that he might have gone to trial relying on that defense.[9] I recognize

discussion that followed in *Morgan,* to which the majority now refers, was unnecessary to the disposition of that appeal. But even if it were not dicta, it would not justify the result reached by the majority today.

Arguably, the "acquittal" standard should apply in a case like *Morgan,* in which the defendant, through his plea, reserved the right to present one specific defense and a trial was held. As pointed out by Judge Posner in *Morgan,* psychiatric evidence on the issue of insanity is highly probative on the issue of specific intent. A federal habeas court, armed with the record produced at an insanity trial, may be able to make an educated assessment of whether the defendant had a tenable defense based on lack of specific intent to kill. Additionally, in *Morgan,* the facts of the crimes were brought out at Morgan's trial on the charges of murdering Mallason's wife and child. Other circumstances in *Morgan* also contributed to an informed assessment of Morgan's chances for acquittal: he had admitted killing Mallason; he never argued that he did not intend to do so; he was faced with the Wisconsin law of presumptive intent; and he would not have been permitted to introduce psychiatric testimony on the issue of specific intent. Clearly, then, the prejudice assessment did not rest merely on the tenuous foundation of the factual basis for Morgan's plea.

Finally, Morgan did not challenge the voluntariness of his plea on the ground that he received ineffective assistance of counsel. Morgan was fully informed of his options, the strength of the government's case was assessed, and the affirmative defense of insanity was investigated, decided upon by Morgan, and pursued, albeit unsuccessfully.

8. I would not equate the "practicability" of a defense with a "reasonable probability" of success. Rather, I use the term "practicable" in the sense of "possible of implementation." The appropriate question is whether it is possible, i.e., neither necessarily probable nor impossible, that the defense could have been pursued successfully.

9. I do not agree with the state courts that Evans was not entitled to an evidentiary hearing because his "voluntary statements" at the guilty

that this might be a difficult determination to make even after an evidentiary hearing, but it clearly cannot be made without one. Therefore, I respectfully dissent.

plea proceeding necessarily refuted an intoxication or "blackout" defense. It has not been conclusively established that these statements were truly voluntary. Although a review of the state court record reveals that Evans did indeed agree with the factual basis for the plea as propounded by counsel, and did make affirmative statements tending to show he remembered the events giving rise to the charges against him, Evans has alleged that counsel instructed him not only to agree with the factual basis for the plea tendered by counsel but to make a voluntary statement about the crimes in an effort to convince the trial judge that he did recall the events. Although it is true that "[s]olemn declarations in open court carry a strong presumption of verity" and "[c]onstitute a formidable barrier in any subsequent collateral proceedings" *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977), "[t]he federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, and misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Id.* at 75, 97 S.Ct. at 1629–1630. In light of the record in this case, which establishes that Evans has maintained from early in the proceedings that he could not recall the events at the police station, we cannot say the allegation

of memory loss was "palpably incredible." *Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962). Nor can we foreclose the possibility that Evans' affirmative in-court statements, allegedly made upon advice of counsel, "might have been a courtroom ritual more sham than real." *Blackledge,* 431 U.S. at 78, 97 S.Ct. at 1631. Relevant factual questions to be explored with respect to this issue would include: (1) whether Evans had, as his counsel asserted at the guilty plea proceeding, informed counsel that he had recalled the events in question; and (2) whether counsel did instruct Evans to agree with everything he said at the hearing and to make affirmative statements tending to show he remembered the events. I would further note that neither the state courts nor the district court attempted to determine whether Evans' affirmative in-court statements that he never pointed a gun at anyone in the station and that he asked Azbill if he would like to leave the station were accurate.