928 F.2d 1481
 Thomas E. CREECH, Petitioner-Appellant,
v.
A.J. ARAVE, Warden, Idaho State Penitentiary; Al Murphy,
Director, Idaho State Board of Corrections; Jim
Jones, Attorney General, State of Idaho,
Defendants-Appellees.
 No. 86-3983.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 6, 1988.
Submission Deferred Aug. 25, 1988.
Resubmitted July 12, 1990.
Decided March 27, 1991.
 
 Cliff Gardner, Fiedler & Gardner, San Francisco, Cal., for petitioner-appellant.
 Lynn E. Thomas, Sol. Gen., State of Idaho, Boise, Idaho, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before BEEZER, HALL and WIGGINS, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Petitioner Thomas E. Creech appeals from the district court's denial of his petition for a writ of habeas corpus. Creech is currently incarcerated at the Idaho State Correctional Institution ("ISCI") on the basis of three Idaho murder convictions. The conviction which gives rise to this appeal is based on Creech's 1981 murder of David Jensen, a fellow inmate at ISCI. Creech pleaded guilty to first degree murder and was sentenced to death.
 
 
 2
 * The facts and proceedings in this case are adequately described in opinions rendered by the Idaho Supreme Court after Creech's direct appeal, State v. Creech, 105 Idaho 362, 670 P.2d 463, 465-66 (1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984) ("Creech I "), and after his efforts to obtain post-conviction relief, State v. Creech, 109 Idaho 592, 710 P.2d 502, 502-07 (1985) ("Creech II "). Additional facts will be discussed where relevant to the issues we must decide in this appeal.
 
 II
 
 3
 We review de novo the district court's denial of a petition for habeas corpus. Carter v. McCarthy, 806 F.2d 1373, 1375 (9th Cir.1986), cert. denied, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). We review any factual findings made by the district court for clear error. Hayes v. Kincheloe, 784 F.2d 1434, 1436 (9th Cir.1986), cert. denied, 484 U.S. 871, 108 S.Ct. 198, 98 L.Ed.2d 150 (1987).
 
 III
 
 4
 Creech initially contends that he should be allowed to withdraw his guilty plea. This contention rests upon two arguments. First, Creech argues that he was denied effective assistance of counsel because his attorney failed to provide him with certain information prior to the making of his guilty plea. Second, Creech argues that in the absence of such information, his plea was not "voluntary and intelligent" and therefore cannot be allowed to stand. We find these arguments differ merely in form, not in substance, Evans v. Meyer, 742 F.2d 371, 375 (7th Cir.1984) and therefore we will discuss them together.
 
 
 5
 A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). "The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding." United States v. Frye, 738 F.2d 196, 199 (7th Cir.1984).
 
 
 6
 Although the Supreme Court has found that ineffective assistance of counsel can apply to guilty pleas, Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), most cases that have dealt with such challenges have involved attorney recommendations that the defendant plead guilty. Here, however, Creech's attorney, Rolf Kehne, told the court in Creech's presence that he believed Creech should continue to plead not guilty. Creech himself acknowledged that "my attorney advised me not to plead." Thus, the alleged error is not that Kehne misled Creech by recommending the wrong plea, but that he failed to provide Creech with certain information. Specifically, Creech claims Kehne failed adequately to discuss the elements of the crime or possible defenses with him before he pleaded guilty.
 
 
 7
 To establish that he received ineffective assistance of counsel, Creech must show: (1) his attorney's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In reviewing alleged deficiencies in representation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. at 2065.
 
 
 8
 Creech pleaded not guilty at his initial arraignment on June 19, 1981 before Judge Newhouse of the Idaho state district court. On August 28, 1981, Judge Newhouse convened a plea hearing in response to a letter from Creech stating that he wished to plead guilty. Kehne stated by way of affidavit that he had "absolutely no advance notice" that Creech was going to change his plea, and he was allowed "less than fifteen minutes" to attempt to change his client's mind.
 
 
 9
 The district court found "as a matter of fact" that Kehne did not discuss with Creech the "specific elements of the offense with which he was charged or possible defenses to these charges." Nevertheless, the district court reviewed counsel's performance throughout the state court proceedings and held that "[Kehne's] representation did not fall below an objective standard of reasonableness."To establish that Kehne's representation fell below an objective standard of reasonableness, Creech must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. In support of his claim that Kehne's failure to inform him of the elements of the crime and possible defenses were omissions which fell below this standard, Creech relies on Brown v. Butler, 811 F.2d 938 (5th Cir.1987) and United States v. Bigman, 906 F.2d 392 (9th Cir.1990). In Brown, the Fifth Circuit held that counsel's failure to inform the defendant of a venue defense prior to his guilty plea rendered counsel's performance below the objective standard of reasonableness. Because of this omission, the court believed the defendant was unable to make an informed and conscious choice with respect to his plea. Brown, 811 F.2d at 942. In Bigman, this circuit required remand for an evidentiary hearing due to uncertainty whether the defendant had been apprised of the intent element of the crime to which he pleaded guilty.
 
 
 10
 Unlike Brown and Bigman, however, any omission on Kehne's part was not the result of his incompetence as counsel. Creech simply did not allow his counsel to inform him of the elements of the offense or possible defenses. The transcript of the August 28 plea hearing shows that Kehne explicitly told the court in Creech's presence that the guilty plea was against his advice. As the district court properly noted, "a defendant may not be forced to abide by the advice of counsel."[1] Furthermore, at that hearing Creech told the court that he had discussed the plea with counsel, that he believed he had sufficient time to discuss his plea with counsel, that he was satisfied with his attorney's representation, and that he understood that by pleading guilty he was giving up any defense to the charge.
 
 
 11
 Kehne told Creech that his advice was to not change the plea. He also told Creech that he needed more time. Nevertheless, Creech informed the court that he wished to proceed and plead guilty. We cannot now accept the claim that Creech was therefore unfairly deprived of the assistance of counsel. Kehne's actions were reasonable under the circumstances.
 
 
 12
 Creech has also failed to show that he was prejudiced. In Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), the Supreme Court held that requiring a showing of prejudice serves "the fundamental interest in the finality of guilty pleas." The Court noted that,
 
 
 13
 Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.
 
 
 14
 Id. (quoting United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979)).[2]
 
 
 15
 First, with respect to Creech's claim that he did not understand the elements of the offense of first degree murder, Creech contends that the "malice" element was not adequately explained to him. The Supreme Court has stated that a plea may be involuntary "because [the defendant] has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Henderson v. Morgan, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 n. 13, 49 L.Ed.2d 108 (1976). "Without ... proof that [the defendant] in fact understood the charge, the plea cannot be voluntary ..." Id.
 
 
 16
 The district court correctly rejected Creech's argument that his ignorance of the elements of first degree murder should invalidate his plea. It found that "Creech understood that malice or intent was an element of first degree murder at the time he pled guilty."
 
 
 17
 The state trial judge's colloquy with Creech at his August 28, 1981 plea hearing supports the district court's decision. In particular, the trial court asked Creech the following:
 
 
 18
 Q (by the Court): What, as you understand it, does a person have to do to be guilty of the charge of first degree murder? What does it mean to you?
 
 
 19
 A: He has got to think about doing it.
 
 
 20
 Q: And killing someone.
 
 
 21
 A: And killing someone.
 
 
 22
 Moreover, shortly after this exchange, the prosecution inquired as follows:
 
 
 23
 Q (by Mr. Harris): Mr. Creech, did you intend to kill Mr. Jensen? ...
 
 
 24
 A: When I first had the fight with him, no. But the second time, yes, I did intend to kill him.
 
 
 25
 Q: That was later in the day?
 
 
 26
 A: Yes, sir.
 
 
 27
 Q: Did you take action to kill him after he was no longer a threat to you? Was in no condition to hurt you?
 
 
 28
 A: Yes, I did.
 
 
 29
 Q: What did that include?
 
 
 30
 A: I kicked him in his throat and his head.
 
 
 31
 Q: Was that after he was unconscious?
 
 
 32
 A: He wasn't all the way unconscious, but he was down on the floor.
 
 
 33
 Therefore, on the basis of Creech's own testimony the district court correctly concluded that Creech understood that malice aforethought was an element of the charge.[3]
 
 
 34
 Second, with respect to Creech's claim that neither the court nor his attorney explained the defense of "imperfect self-defense," Creech argues that without such an explanation he did not have a full understanding of the law in relation to the facts. This issue was not addressed by the district court, although it found as a matter of fact that counsel did not discuss with Creech possible defenses to the murder charge.
 
 
 35
 In Sober v. Crist, 644 F.2d 807, 809 n. 3 (9th Cir.1981), we held that "[t]he accused should be made aware of possible defenses, at least where the attorney or court is made aware of facts that would constitute such a defense." Because Creech arguably could have claimed imperfect self-defense, he may have been prejudiced by his lack of knowledge.
 
 
 36
 The state argues, however, that the failure of counsel or the court to explain this defense constituted harmless error. See United States v. Lopez, 575 F.2d 681, 685 (9th Cir.1978) (where a constitutional error is found, an appellate court's duty is to reverse unless it is "able to declare a belief that it was harmless beyond a reasonable doubt.") (quoting Chapman v. California, 86 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).
 
 
 37
 The State points to Creech's earlier murder convictions and his repeated attempts to interpose self-defense as a defense to those crimes as evidence that Creech knew of the possible defenses to the crime. Creech counters that nothing in the record shows that, relative to the Jensen murder, he had an understanding of this defense. Appellees also argue that any error was harmless because such a defense would have been contrary to the "overwhelming" evidence against Creech.
 
 
 38
 In Evans v. Meyer, 742 F.2d 371 (7th Cir.1984), the court opined that where uncontested facts make it inconceivable that a jury would acquit on the proposed defense, a plea entered without the defendant's knowledge of the defense can nevertheless be voluntary. See also Hill, 474 U.S. at 59, 106 S.Ct. at 370 ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial").
 
 
 39
 After conducting our own review of the record in this case, we find it "inconceivable ..., and not merely improbable ... that [Creech] would have gone to trial on a defense of [imperfect self-defense], or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received." Evans, 742 F.2d at 375. Even assuming his attorney's performance was not reasonable, we believe Creech's ignorance of the possible defense of "imperfect self-defense" was harmless beyond a reasonable doubt.
 
 IV
 
 40
 During his August 28, 1981 plea hearing, at Kehne's insistence, Creech reserved the right to withdraw his guilty plea if psychological evaluations showed Creech incompetent to plead guilty. Creech claims in his petition that the testimony of Doctors Stoner and Heyrend substantiate his claim of incompetence; consequently, he argues that he should be allowed to withdraw his plea.[4]
 
 
 41
 A defendant is not competent to plead guilty if "mental illness has substantially impaired his or her ability to make a reasoned choice among the alternatives presented to him and to understand the nature and consequences of his plea." Sieling v. Eyman, 478 F.2d 211, 215 (9th Cir.1973).[5] The district court found that Creech failed to show that he was incompetent at the time he entered his guilty plea. Creech's central contention is that the district court erred in this finding because it applied the wrong standard. Contrary to Creech's assertion, however, it is apparent from the opinion below that the district court simply concluded that there was no evidence that Creech was incompetent to plead guilty.
 
 
 42
 We affirm the district court's conclusion regarding Creech's competency to plead guilty. Creech has not pointed to any evidence to support his claim. The only "evidence" purported to buttress his claim of incompetency contains no citations to the record.[6]V
 
 
 43
 Creech next claims that his right to confrontation was violated because he had no meaningful opportunity to cross-examine the sources of information contained in his presentence report. At Creech's January, 1982 sentencing hearing, Judge Newhouse took judicial notice of the presentence report, which included reports from several Idaho psychiatrists, a previous presentence report from an Ohio conviction containing reports from Ohio psychologists, psychiatric evaluations from Oregon doctors, and numerous newspaper articles and editorials. The Idaho Supreme Court in Creech I found that all the material in the presentence report was considered by the sentencing judge. 670 P.2d at 468.
 
 
 44
 The trial judge at sentencing may appropriately conduct a broad inquiry largely unlimited as to the kind of information to be considered or the source of such information. United States v. Grayson, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978). The Supreme Court in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), expressly approved of a sentencing court's reliance on information contained in a presentence report in imposing a death sentence. The Court wrote that "most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination." Id. at 250, 69 S.Ct. at 1084.[7]
 
 
 45
 Neither the district court nor the Idaho Supreme Court addressed the claim that Creech was denied an opportunity to rebut or explain the testimony contained in the presentence report. The only reference to this issue is Judge Huntley's dissent in Creech I which stated that Creech could not rebut the information in the presentence report through the device of cross-examination. 670 P.2d at 480 n. 1 (Huntley, J., dissenting). It is apparent, however, that Creech had the opportunity, other than through cross-examination, to dispute the accuracy of the presentence report prior to and at his January, 1982 sentencing hearing because his counsel was given the report prior to the sentencing hearing.
 
 
 46
 Because Creech had the opportunity to rebut, deny or explain the information contained in the presentence report, this case is distinguishable from Gardner v. Florida, 430 U.S. 349, 356, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977), and is in line with Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).[8] In Gardner, the Court ruled that the defendant was denied due process of law when the death sentence was imposed on the basis of information never disclosed to him. 430 U.S. at 362, 97 S.Ct. at 1207 (plurality opinion). Gardner relied on the absence of any opportunity for counsel to challenge the accuracy of information contained in a presentence report. Id. at 356, 97 S.Ct. at 1204 (distinguishing Williams ), at 358-62, 97 S.Ct. at 1204-07. We conclude that Creech's right to confrontation was not violated in this case.
 
 VI
 
 47
 Creech claims that he is entitled to a new sentencing hearing due to the trial court's unconstitutional application of the Idaho sentencing statute, Idaho Code Sec. 19-2515. Creech alleges three errors: (1) the trial court refused to allow him to present any mitigating evidence at his March 17, 1983 resentencing hearing in violation of the Eighth and Fourteenth Amendments; (2) at his sentencing hearing, the court found two aggravating circumstances without making a required finding beyond a reasonable doubt; and (3) one of the aggravating circumstances applied by the trial court, that Creech demonstrated an "utter disregard for human life", is unconstitutionally vague. Creech argues that due to these errors, an improper balance of aggravating and mitigating circumstances resulted. We address each contention in turn.
 
 
 48
 * The Idaho Supreme Court vacated Creech's original sentence of death because the trial judge failed to pronounce the sentence in the presence of the defendant as required by Idaho law. The court ordered resentencing to occur within fourteen days from the date of its order. Creech argues that he did not have an opportunity to introduce mitigating testimony relating to his conduct during the fourteen months between his sentencing and resentencing hearings. This new mitigation evidence would have included testimony by prison guards and spiritual advisors about Creech's good behavior in prison, his personal growth and increased sensitivity, and his writing and recording of a song for a young girl badly injured in an automobile accident.
 
 
 49
 Upon remand, the trial court simply read the sentence of death to Creech. This second sentence of death was affirmed in Creech I, 670 P.2d at 476. The district court found "no constitutional provision which would require the state courts to again conduct the full sentencing hearing at which Creech could present mitigating circumstances."
 
 
 50
 Creech asserts that although he was allowed to present any and all mitigating evidence at his initial sentencing hearing, because the Supreme Court of Idaho voided that sentence and ordered resentencing, constitutionally he must be allowed another opportunity to do so. He argues that the resentencing hearing was not ordered simply to correct a procedural defect. In addition, he contends that in capital resentencing hearings, a defendant must be allowed to present mitigating evidence to ensure the reliability of death sentences.
 
 
 51
 This argument appears to be correct. In Sivak v. State, 112 Idaho 197, 731 P.2d 192 (1986), the Idaho Supreme Court ruled on the precise claim presented here. The court found that an order identical to the one at issue here, issued to the same judge (Judge Newhouse), and based on the same error as present here mandated that the trial judge permit the introduction of new mitigating evidence at the resentencing hearing.
 
 
 52
 The Sivak court held that evidence of a defendant's good behavior and peaceful adjustment while in prison was mitigation evidence, id., 731 P.2d at 196-97, and that the principles of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), required that a defendant be allowed to offer such mitigating evidence at resentencing. Sivak, 731 P.2d at 197. The Idaho Supreme Court's discussion is highly persuasive.
 
 
 53
 Like the Idaho Supreme Court, id., we see no rational basis for distinguishing the evidence of a defendant's good conduct while awaiting trial and sentencing, and evidence of a defendant's good conduct pending review of a death sentence which is vacated on appeal. On this basis, we reverse and remand with instructions to grant the petition. The writ shall order Creech's release if, within a reasonable time set by the district court, Idaho fails to vacate Creech's sentence and provide Creech with a resentencing hearing at which he can present any and all mitigating evidence that exists at the time of the hearing.
 
 B
 
 54
 Creech claims that the trial court applied two aggravating circumstances without making a required finding. The trial court found as aggravating circumstances that "defendant was under a sentence for Murder of the First Degree at the time of his actions" and that "defendant committed the murder on a fellow inmate while both were incarcerated in the Idaho State Correctional Institution." Each is an element of the crime of first degree murder for which Creech was charged. See Idaho Code Sec. 18-4003(c), (e) (1987).
 
 
 55
 To properly constitute aggravating circumstances under Idaho law, the elements contained in sections 18-4003(c) and (e) must be combined "with the specific intent to cause ... death of a human being." Idaho Code Sec. 19-2515(g)(7) (1987). Creech argues that Judge Newhouse failed to find such an intent beyond a reasonable doubt; therefore, he asserts, the judge listed these aggravating circumstances without determining if they should apply.[9]
 
 
 56
 We find that there is evidence by which Judge Newhouse could have concluded that Creech had specific intent. At the time he pleaded guilty, Creech admitted that he intended to kill Jensen.[10] Nevertheless, Judge Newhouse's Findings fail to indicate that he found specific intent beyond a reasonable doubt before applying section 19-2515(g)(7).[11] On remand, the district court shall grant the petition. The writ shall order Creech's release if the state judge at resentencing applies the aggravating circumstances under this section without making a finding of specific intent.
 
 C
 
 57
 Creech claims that the statutory aggravating circumstance, that "the defendant exhibited utter disregard for human life," Idaho Code Sec. 19-2515(g)(6), is unconstitutionally vague. Recently, the Supreme Court announced the process by which we review such a challenge. In Walton v. Arizona, --- U.S. ----, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990), the court held:
 
 
 58
 When a federal court is asked to review a state court's application of an individual statutory aggravating or mitigating circumstance in a particular case, it must first determine whether the statutory language defining the circumstance is itself too vague to provide any guidance to the sentencer. If so, then the federal court must attempt to determine whether the state courts have further defined the vague terms and if they have done so, whether those definitions are constitutionally sufficient, i.e., whether they provide some guidance to the sentencer.
 
 
 59
 Applying Walton, we first conclude that the aggravating circumstance listed in section 19-2515(g)(6) is unconstitutionally vague. Idaho defines murder as "the unlawful killing of a human being with malice aforethought." Idaho Code Sec. 18-4001 (1987). In section 18-4003, Idaho separates murder into first and second degree. Only those convicted of first degree murder are statutorily eligible to be sentenced to death. Idaho Code Sec. 18-4004 (1987). Given that some defendants who kill with malice aforethought are not even eligible to be sentenced to death, we fail to see how the aggravating circumstance of "the utter disregard for human life" permits "the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." Lewis v. Jeffers, --- U.S. ----, 110 S.Ct. 3092, 3099, 111 L.Ed.2d 606 (1990).
 
 
 60
 In State v. Osborn, 102 Idaho 405, 631 P.2d 187 (1981), the Idaho Supreme Court also recognized the infirmity of section 19-2515(g)(6). The court held, "it is ... apparent under Godfrey that this court must place a limiting construction upon [the "utter disregard" ] aggravating circumstance[ ] so as to avoid the possibility of [its] application in an unconstitutional manner." 631 P.2d at 200 (citing Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)). We therefore analyze, under the second step of Walton, whether the aggravating circumstance, as construed by the Idaho Supreme Court at the time Creech was sentenced, was unconstitutionally vague.[12]
 
 
 61
 The Supreme Court has found that aggravating circumstances must "channel the sentencer's discretion by clear and objective standards that provide specific and detailed guidance and that make rationally reviewable the process for imposing a sentence of death." Godfrey v. Georgia, 446 U.S. 420, 428, 100 S.Ct. 1759, 1765, 64 L.Ed.2d 398 (1980) (quotations and footnotes omitted). "[T]he channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action." Maynard v. Cartwright, 486 U.S. 356, 362, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372 (1988).
 
 
 62
 Given this standard, we find that the narrowing construction of section 19-2515(g)(6), as applied to Creech, was unconstitutionally vague. Having concluded that the statutory language "the defendant exhibited utter disregard for human life" was too vague, the Idaho Supreme Court limited it by stating "the phrase is meant to be reflective of acts or circumstances surrounding the crime which exhibit the highest, the utmost, callous disregard for human life, i.e., the cold-blooded, pitiless slayer." Osborn, 631 P.2d at 201.
 
 
 63
 This limiting construction gives no more guidance than the statute. Rather than defining "utter disregard," the court in Osborn merely emphasized it. But the problem with the "utter disregard" standard is not that it is too low a threshold, it is that it is unclear. Idaho's limiting construction does not resolve this infirmity. Just as it is difficult to determine what constitutes "utter disregard for human life," it is unclear what constitutes "the highest, the utmost, callous disregard for human life." The Supreme Court noted in Cartwright, 486 U.S. at 364, 108 S.Ct. at 1859, that the "contention that the addition of the word 'especially' somehow guides the jury's discretion, even if the term 'heinous' does not, is untenable." Cartwright 's reasoning appears to apply here.
 
 
 64
 Godfrey speaks of "clear and objective" standards. The Court has approved limiting constructions that have defined the terms of the statutory aggravating circumstance through objective standards. In Walton v. Arizona, --- U.S. ----, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990) the Court upheld an aggravating factor of "especially heinous, cruel or depraved" when it noted that the aggravating factor had the following limitations: "[A]n especially cruel manner [is] when the perpetrator inflicts mental anguish or physical abuse before the victim's death," id., 110 S.Ct. at 3057, and "an especially 'depraved' manner [is] when the perpetrator 'relishes the murder, evidencing debasement or perversion,' or 'shows an indifference to the suffering of the victim and evidences a sense of pleasure' in the killing." Id. at 3058.
 
 
 65
 In Cartwright, 486 U.S. 356, 108 S.Ct. 1853, the Court affirmed the Tenth Circuit's conclusion that Oklahoma's aggravating circumstance of "especially heinous, atrocious or cruel" was still unconstitutionally vague even though Oklahoma had defined "heinous" as "extremely wicked or shockingly evil" and had defined "atrocious" as "outrageously wicked and vile."[13] According to the circuit court, "Vague terms do not suddenly become clear when they are defined by reference to other vague terms." Cartwright v. Maynard, 822 F.2d 1477, 1489 (10th Cir.1987). The Court agreed with the Tenth Circuit, however, that a limiting instruction of "some kind of torture or physical abuse", while not the only permissible construction, would have made the aggravating circumstance constitutional.[14]
 
 
 66
 Unlike those cases, where the sentencer could make an objective determination of whether specific acts occurred, the Idaho limiting construction calls for a subjective determination of whether the defendant is a "cold-blooded, pitiless slayer." The limiting construction therefore fails to channel the sentencer's discretion.
 
 
 67
 The vagueness of the Osborn limiting construction is apparent by its application in this case. In his Findings in sentencing Creech to death, Judge Newhouse found that Creech "did not instigate the fight with the victim, but the victim, without provocation, attacked him. He was initially justified in protecting himself." While he found that "[a]fter the victim was helpless the defendant killed him," Judge Newhouse also noted that the murder "evidenc[ed] an excessive violent rage."[15] Given these factual findings, we cannot agree with the conclusion that by the murder itself, or circumstances surrounding its commission, Creech demonstrated that he was a cold-blooded pitiless killer.[16] We therefore find the Idaho limiting construction, as applied to Creech, to have been unconstitutionally vague.
 
 D
 
 68
 We have found that one of the five statutory aggravating circumstances cited by Judge Newhouse, that Creech exhibited utter disregard for human life, is unconstitutionally vague. Second, we have found that two additional aggravating circumstances were applied without the required finding of specific intent. Finally, we have found that Creech must be given an opportunity to provide any additional mitigating evidence.
 
 
 69
 Idaho Code section 19-2515(c) holds that a sentence of death may not be imposed unless the court finds at least one statutory aggravating circumstance. Even with our findings today, this requirement has been met. Section 19-2515(c) goes on, however, and requires a balancing of mitigating and aggravating circumstances. Given our findings, the weight of both types of factors is apt to change. Thus, we cannot rely on the trial court's conclusion that Creech deserved the death penalty. See Clemons v. Mississippi, --- U.S. ----, 110 S.Ct. 1441, 1450, 108 L.Ed.2d 725 (1990); Cartwright v. Maynard, 822 F.2d 1477, 1483 (10th Cir.1987) ("A death sentence that is imposed pursuant to a balancing that included consideration of an unconstitutional aggravating circumstance must be vacated under the Eighth and Fourteenth Amendments."), aff'd, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).
 
 
 70
 We therefore reverse and remand with instructions to grant the petition. The writ shall order Creech's release unless, within a reasonable time set by the district court, the Idaho court balances the remaining, constitutionally valid aggravating and mitigating factors in order to determine whether Creech should be sentenced to death.
 
 VII
 
 71
 Creech claims that the Constitution guarantees a jury trial on the existence of aggravating circumstances which may result in the imposition of a sentence of death. Creech draws the following analogy: some of the aggravating circumstances found by the state court are facts analogous to elements of the crime of "capital murder" and must be proven beyond a reasonable doubt; therefore, a jury must determine their existence.
 
 
 72
 In rejecting Creech's claim, the district court relied on Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). In Spaziano, the Supreme Court rejected the argument that "placing responsibility on the trial judge to impose the sentence in a capital case is unconstitutional." Id. at 464, 104 S.Ct. at 3164. Creech attempts to distinguish Spaziano and similar Supreme Court cases by asserting that while the exercise of discretion in sentencing may remain with the trial judge, the jury must find the existence of facts, such as aggravating circumstances.
 
 
 73
 Creech's argument has been fully rejected by the Supreme Court. In McMillan v. Pennsylvania, 477 U.S. 79, 91, 106 S.Ct. 2411, 2418-19, 91 L.Ed.2d 67 (1986), the Court wrote that "[s]entencing courts have traditionally heard evidence and found facts...." The Court further opined that the claim that a jury must find sentencing considerations "merits little discussion." Id. at 93, 106 S.Ct. at 2420. The Court ultimately held in McMillan that "there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." Id. (citing Spaziano ).
 
 
 74
 More recently, the Court specifically held in Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 2057, 104 L.Ed.2d 728 (1989) that "the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury." See also Walton v. Arizona, --- U.S. ----, 110 S.Ct. 3047, 3054, 111 L.Ed.2d 511 (1990). We therefore find that consistent with these cases, Creech had no constitutional right to a jury trial on the existence of aggravating circumstances.
 
 VIII
 
 75
 Creech claims that the Idaho capital sentencing scheme violates the Eighth Amendment because it provides a mandatory sentencing formula. Specifically, Creech argues that Idaho Code Sec. 19-2515(c) is unconstitutional. Section 19-2515(c) provides:
 
 
 76
 [w]here a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one (1) statutory aggravating circumstance. Where the court finds a statutory aggravating circumstance the court shall sentence the defendant to death unless the court finds that mitigating circumstances which may be presented outweigh the gravity of any aggravating circumstance found and make imposition of death unjust.
 
 
 77
 Idaho Code Sec. 19-2515(c) (1987) (emphasis added).
 
 
 78
 The basis of Creech's contention is that the Idaho courts shall apply the death penalty unless mitigating circumstances outweigh the aggravating circumstances and make the imposition of death unjust. Idaho Code Sec. 19-2515(c) (1987). Creech claims this removes an "individualized determination" and a "moral response" in sentencing.
 
 
 79
 Appellees argue that the Idaho sentencing scheme is valid because it permits the sentencing court to consider all relevant mitigating evidence, consistent with Lockett v. Ohio, 438 U.S. at 602-08, 98 S.Ct. at 2963-67. In addition, appellees note that the statute places upon the state the burden of proof to show at least one statutory aggravating circumstance beyond a reasonable doubt, thus fulfilling the "narrowing function" required by Zant v. Stephens, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). As construed by the Idaho Supreme Court, moreover, appellees point out that the defendant's burden with respect to mitigating circumstances is not one of persuasion but, rather, one of "rais[ing] any factors which might possibly tend to mitigate his culpability for the offense." State v. Osborn, 102 Idaho 405, 631 P.2d 187, 199 (1981).
 
 
 80
 This issue has been recently resolved by the Supreme Court. In Blystone v. Pennsylvania, 494 U.S. 370, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), the Court rejected a challenge to a similar requirement, holding that such a statute is not "impermissibly mandatory", id. 110 S.Ct. at 1082, and that "[t]he requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence." Id. at 1083. Similar statutes have been upheld in other cases. See Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990); Walton, 110 S.Ct. 3047. We therefore find that section 19-2515(c) is constitutional.
 
 IX
 
 81
 Creech finally claims that we should remand this case to the district court because the district court improperly limited its evidentiary hearing on his petition. Under Townsend v. Sain, 372 U.S. 293, 312-13, 83 S.Ct. 745, 756-57, 9 L.Ed.2d 770 (1963), a district court must hold an evidentiary hearing if (1) the petitioner's allegations, if proved, would entitle him to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. An evidentiary hearing must be held if, for example, state court fact-finding procedures were inadequate, or the material facts were not adequately developed at the state court hearing. Id. at 313, 83 S.Ct. at 757.[17] Creech's claim with respect to the legal requirement of an evidentiary hearing is two-fold.
 
 
 82
 First, although Creech admits that he addressed each factual issue in his February 1984 state post-conviction plea withdrawal hearing, he claims that hearing was inadequate because he was given only two weeks to file all his post-conviction collateral state proceedings and two additional weeks to fully prepare for the hearing. Consequently, Creech argues that an evidentiary hearing under Townsend was required on several claims presented to the district court.
 
 
 83
 The district court's opinion does not address this claim. Further, Appellees do not address Creech's allegations and the only evidence on this claim is the self-serving affidavit of Creech's counsel. The Idaho Supreme Court opinion in Creech II, 710 P.2d 502, however, addresses the precise issue raised by Creech. Creech's death sentence was affirmed by the Idaho Supreme Court on May 23, 1983 and it was not until January 24, 1984 that Creech was ordered to make his final post-conviction challenges. Id. at 507. Consequently, counsel's complaint that he had only four weeks to prepare his case is not accurate.
 
 
 84
 In justifying the limited time afforded Creech to make his final post-conviction challenges, the Idaho Supreme Court in Creech II relied on Barefoot v. Estelle, 463 U.S. 880, 889, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983), for the proposition that "the use of summary procedures for the expeditious resolution of collateral proceedings in death penalty cases" is proper. 710 P.2d at 507. In Barefoot, the Supreme Court cited its prior cases which approved the summary procedures adopted by the Circuit Courts of Appeal for the disposition of habeas appeals on the merits before the scheduled date of execution. 463 U.S. at 889, 103 S.Ct. at 3392.
 
 
 85
 Creech has had a full and fair opportunity to present the relevant facts of his claims. Counsel had more than enough time between the affirmance of Creech's death sentence and the deadline for filing of post-conviction challenges to prepare any post-conviction claims for relief. Consequently, we hold that Creech is not entitled to an evidentiary hearing on this basis.
 
 
 86
 Creech's second argument is that the state court did not issue written findings on his claims that he was suicidal when he entered the guilty plea and that his plea was motivated by threats against his family. Therefore, Creech argues the district court could not have concluded that these issues were reliably determined by the state trier of fact and an evidentiary hearing is required.
 
 
 87
 The district court found that "[t]here is nothing in the record to suggest Creech was suicidally depressed at the time he entered his plea of guilty," and that Creech's "self-serving testimony" with respect to threats against his family was insufficient to invalidate his plea. Although the district court did not make this point clear, it must have made these determinations without an evidentiary hearing based on the implied findings of the state trier of fact. Under Townsend, state court factual determinations may be implied from the actions taken by the state court. See Townsend, 372 U.S. at 314, 83 S.Ct. at 757-58; Butcher v. Marquez, 758 F.2d 373, 376 (9th Cir.1985). For example, "[w]hen a state trial court holds a hearing to suppress evidence and rules on the motion, a federal district court may assume that the state court found the facts necessary to support the state court's decision, unless there is some indication that the state court applied an incorrect legal standard." Knaubert v. Goldsmith, 791 F.2d 722, 727 (9th Cir.), cert. denied, 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986).
 
 
 88
 In the instant case, it appears from the state trial court's February, 1984 denial of Creech's motion to withdraw his plea that Judge Newhouse implicitly rejected the factual circumstances that Creech alleges invalidate his plea and that Creech asserts require an evidentiary hearing. Moreover, although the state trial court did not issue written findings concerning the February, 1984 withdrawal hearing,[18] the Idaho Supreme Court, in affirming the state trial court in Creech II, held that Creech offered no evidence other than his own assertions to support either of his arguments. Cf. Sumner v. Mata, 449 U.S. 539, 546-47, 101 S.Ct. 764, 768-69, 66 L.Ed.2d 722 (1981) (28 U.S.C. Sec. 2254(d) presumption of correctness of state court findings applies equally to state trial court and state appellate court fact-finding). We affirm the district court's denial of an evidentiary hearing on these issues.
 
 
 89
 Creech also contends that a remand is required because he did not have an opportunity to present evidence on the medication issue to the district court. Creech argues he should have been granted a continuance in order to prepare for an evidentiary hearing. A district court's decision regarding a motion for a continuance is reviewed for an abuse of discretion. Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).
 
 
 90
 The district court found that Creech did not "advise the court that notification of the parties on May 22, 1986, as to the nature and scope of the May 29th hearing would not provide counsel with adequate time to prepare for that hearing." Moreover, the district court found that Creech's own delinquency culminated in the limited period of time between the deadline for briefing and the May 29th hearing date. Further, Creech's counsel admitted as much at the May 29th hearing, stating "I frankly am not prepared to present medical evidence today and ... that was my confusion and it was all my fault...."
 
 
 91
 Creech was given one week's notice of the nature and scope of the evidentiary hearing. In conjunction with Creech's delinquency and the amount of time for Creech to prepare his case between the filing of the habeas petition on January 29 and the May 29 hearing (not to mention the four years between Creech's initial sentencing on January 25, 1982 and the filing of his petition), we conclude that the district court did not abuse its discretion in denying Creech a continuance.
 
 X
 
 92
 We AFFIRM the district court on Creech's claims of ineffective assistance of counsel, incompetence to plead guilty, involuntary and unknowing guilty plea, denial of his right to confrontation, and need for an evidentiary hearing. We also AFFIRM the district court's conclusion that Creech had no right to a jury trial on the existence of aggravating factors and that he was not sentenced pursuant to a mandatory death penalty formula. We REVERSE and direct the district court to grant the petition on Creech's claim that the state trial court relied on improper aggravating circumstances, and that prohibiting him from introducing evidence of mitigating circumstances at his resentencing hearing violates the Constitution.
 
 
 93
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Creech now characterizes his actions as a waiver of the right to counsel and argues that under Faretta v. California, 422 U.S. 806, 817, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975) his waiver cannot stand since he was not advised of the "dangers and disadvantages of self-representation." We believe the issue here is more properly seen as whether Creech voluntarily and knowingly pleaded guilty, not whether he waived counsel
 At the hearing, Judge Newhouse attempted to ensure that Creech was aware of the dangers of pleading guilty. In response to the judge's questions, Creech acknowledged that he understood that by pleading guilty he was admitting the crime, giving up any defenses to the charge, and forgoing his constitutional rights to trial by jury and to confront his accusers, as well as the privilege against self-incrimination. Creech also acknowledged that he understood that the maximum penalty for first degree murder was death.
 
 
 [2]
 See also Evans v. Meyer, 742 F.2d 371 (7th Cir.1984). In Evans, the court, in holding that prejudice must be shown in cases where the defendant claims ineffective assistance of counsel due to counsel's failure to inform him of a defense, stated,
 Among other objections to holding [otherwise] is that it would create an exquisite conflict between the lawyer's duty to his client and to justice; for by holding back from his client some unimportant information about litigation options, the lawyer would guarantee that the client could get his guilty plea set aside as involuntary if he was dissatisfied with the sentence he received after pleading guilty.
 Id. at 374.
 
 
 [3]
 Creech concedes that the quoted colloquy "[a]rguably ... shows that Mr. Creech understood that premeditation was required for first degree murder."
 
 
 [4]
 Respondent's assertion that this claim was not raised below is without merit
 
 
 [5]
 It is unclear whether a state court's determination of competency to plead guilty is entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d). Cf. Harding v. Lewis, 834 F.2d 853, 856 (9th Cir.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988) (trial court's conclusion of competence to waive counsel subject to de novo review); with Evans v. Raines, 800 F.2d 884, 887 (9th Cir.1986) (competence to stand trial is a factual issue entitled to the presumption). Regardless of whether the presumption of correctness attaches here, Creech's claim is without merit
 
 
 [6]
 Creech argues in a footnote that he believed counsel's reservation of the right to withdraw his guilty plea included the right to withdraw if psychiatric tests supported a viable insanity defense. The district court held "it is clear from the transcript of the plea hearing that Creech's plea was not conditioned upon the existence of an insanity defense...." We affirm this determination because the district court did not clearly err
 
 
 [7]
 The Idaho Supreme Court in Creech I held that Creech had no right under Idaho law to a presentence report containing only testimony from live witnesses subject to cross-examination. 670 P.2d at 466-469
 
 
 [8]
 Although Creech is correct in asserting that in Williams the sentencing judge stated the facts upon which it was relying in open court, the opportunity to rebut, explain or deny the information contained in the presentence report was nevertheless available both in Williams and in this case. In fact, Creech had more time in which to examine the report and refute its inaccuracies than did the defendant in Williams, who learned of the information at the sentencing hearing itself. The state trial court in this case specifically found that Creech had access to the report for at least seven days prior to his sentencing hearing, as required by Idaho law
 Creech argues that due to Gardner, Williams is no longer good law. Although Gardner stated that standards of procedural fairness had evolved since Williams was decided, it distinguished rather than overruled Williams 's holding. Gardner, 430 U.S. at 356, 97 S.Ct. at 1203.
 
 
 [9]
 Creech originally argued, relying on Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), that the sentence was unconstitutional because these two aggravating factors were nothing more than elements of first degree murder. Acknowledging that Collins has been overruled, see Perry v. Lockhart, 871 F.2d 1384, 1392 (8th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989) Creech no longer makes this argument
 
 
 [10]
 In response to the State's question of whether he intended to kill Jensen, Creech replied, "When I first had the fight with him, no. But the second time, yes, I did intend to kill him."
 
 
 [11]
 Not only did Judge Newhouse fail to mention specific intent in his listing of these aggravating circumstances, he also found that Jensen instigated the fight and that Creech's actions evidenced "an excessive violent rage." His only finding of intent was "The murder, once commenced, appears to have been an intentional, calculated act." (emphasis added)
 
 
 [12]
 Creech argues that we may not review the limiting construction because it was not explicitly applied by the trial judge. The Supreme Court's words in Walton, however, are instructive:
 When a jury is the final sentencer, it is essential that the jurors be properly instructed regarding all facets of the sentencing process. It is not enough to instruct the jury in the bare terms of an aggravating circumstance that is unconstitutionally vague on its face. That is the import of our holdings in Maynard and Godfrey. But the logic of those cases has no place in the context of sentencing by a trial judge. Trial judges are presumed to know the law and to apply it in making their decisions.
 Walton, 110 S.Ct. at 3057. Although the trial judge used the language of the statute, we follow the Supreme Court's lead and presume that he applied the limiting instruction.
 
 
 [13]
 Recently, the Supreme Court reaffirmed its holding in Cartwright in the context of an identical Mississippi aggravating factor with the same limiting constructions. Shell v. Mississippi, --- U.S. ----, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990)
 
 
 [14]
 See also, Proffitt v. Florida, 428 U.S. 242, 255, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976) (approving "especially heinous, atrocious or cruel" limited to "the conscienceless or pitiless crime which is unnecessarily torturous to the victim.")
 
 
 [15]
 Judge Newhouse also found that "The murder, once commenced, appears to have been an intentional, calculated act." (emphasis added)
 
 
 [16]
 In its briefs, the State argues that "utter disregard" is sufficiently specific, as it applies only to calculated murders. According to the State, "[M]urders that result from a strong provocation or objectively reasonable emotional distress are not comprehended by [the section]." If this is what the limiting construction means, then it was improperly applied to Creech. While the State argues that "Creech cold-bloodedly contrived the murder of David Jensen", this was not the finding of the trial court. See Creech I, 670 P.2d at 465 ("There is some evidence in the record indicating that Creech had been enticed by other inmates to 'do Jensen in,' but the district judge did not decide or find that the murder had been performed on contract or by plan.")
 While concluding that section 19-2515(g)(6), as construed by Osborn, was not unconstitutionally vague, the Idaho Supreme Court never explicitly looked to see if the evidence in this case satisfied Osborn 's standard.
 
 
 [17]
 Under Townsend, 372 U.S. at 313, 83 S.Ct. at 757:
 [A] federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.
 
 
 [18]
 The state trial court found only that it would not be manifestly unjust to deny Creech's motion to withdraw the guilty plea